Sarah Elizabeth Spencer, #11141
    Sarah.Spencer@chrisjen.com
Anna P. Christiansen, # 17518
    Anna.Christiansen@chrisjen.com
CHRISTENSEN & JENSEN, P.C.
257 East 200 South, Suite 1100
Salt Lake City, Utah 84111-2047
Telephone: (801) 323-5000
Facsimile: (801) 355-3472
*Attorneys for Defendant DSV Air & Sea, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| INTERCONTINENTAL BUILDING PRODUCTS, LLC<br><br>           Plaintiff,<br><br>vs.<br><br>DSV AIR & SEA, INC.,<br><br>           Defendant. | **AMENDED ANSWER TO FIRST AMENDED COMPLAINT & COUNTERCLAIM**<br><br>Case No. 2:21-cv-00732-TC<br><br>Judge: Tena Campbell |

Defendant DSV Air & Sea, Inc. ("Defendant" or "DSV"), by and through undersigned counsel, submits the following answer to Plaintiff's amended complaint (ecf. 2-1), defenses and affirmative defenses, and notice of reliance on jury demand, stating as follows:

**FIRST DEFENSE**

All or part of Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted.

**ADMISSIONS AND DENIALS**

1.      Matt Hale is an individual residing in the area of Atlanta, Georgia.

**ANSWER:** Defendant denies paragraph 1 for lack of sufficient knowledge or information.

2.     Intercontinental Building Products is a Texas dba with offices in Dallas, Texas.

**ANSWER:** Defendant denies paragraph 2 for lack of sufficient knowledge or information.

3.     DSV Air & Sea, Inc. is a Utah dba with offices in Salt Lake County, Utah.

**ANSWER:** Defendant admits it is authorized to do business in the state of Utah. To the extent paragraph 3 implies DSV to be incorporated in the State of Utah, Defendant denies paragraph 3.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this matter and the claims asserted herein pursuant to Utah Code §§ 78A-5-102 and 78B-3-205.

**ANSWER:** Paragraph 4 is a legal conclusion to which no response is required. To the extent paragraph 4 alleges facts, Defendant denies paragraph 4.

5.     Venue is proper in this Court pursuant to Utah Code § 78B-3-307.

**ANSWER:** Paragraph 5 is a legal conclusion to which no response is required. To the extent paragraph 5 alleges facts, Defendant denies paragraph 5.

## GENERAL ALLEGATIONS

1.     Among other things, Intercontinental sells glass to customers.

**ANSWER:** Defendant denies paragraph 1 for lack of sufficient knowledge or information.

2.     Beginning in October 2020, Intercontinental used DSV as its freight forwarder.

**ANSWER:** To the extent paragraph 2 alleges Plaintiff used DSV as its sole freight forwarder, Defendant denies. To the extent paragraph 2 alleges that Plaintiff engaged DSV for the purpose of certain discrete freight forwarding services, DSV admits paragraph 2.

3.     Intercontinental worked primarily with Traci Fisher of DSV.

**ANSWER:** Defendant denies paragraph 3 for lack of sufficient knowledge or information.

4. On October 14, 2020, Intercontinental, through Matt Hale, signed a Power of Attorney with DSV for freight forwarding. Exhibit A.

**ANSWER:** DSV admits paragraph 4.

5. The Power of Attorney constitutes a contract between Intercontinental and DSV.

**ANSWER:** Paragraph 5 is a legal conclusion to which no response is required. To the extent paragraph 5 alleges facts, Defendant responds that the document speaks for itself as to its legal meaning and effect, and denies the remaining allegations.

6. The contract includes:

> Company shall use reasonable care in its selection of third parties, or in selecting the means, route and procedure to be followed in the handling, transportation, clearance and delivery of the shipment.

Exhibit A, p. 2, 4 (emphasis added)

**ANSWER:** Responding to the allegations of paragraph 6, the document speaks for itself as to its legal meaning and effect. Defendant denies every allegation in this paragraph inconsistent therewith.

7. Traci Fisher of DSV immediately agreed to handle transportation and delivery of Intercontinental's shipments as a matter of course.

　　a. An example of this practice is indicated in an email that Traci Fisher sent. Exhibit B.

**ANSWER:** Defendant denies paragraph 7. Responding to subparagraph 7.a., DSV admits Traci Fisher sent the Exhibit B email. The email speaks for itself as to its legal meaning and effect. Defendant denies every allegation in this paragraph inconsistent therewith. Defendant

affirmatively denies there was any agreement "to handle transportation and delivery of Intercontinental's shipments as a matter of course" and further denies there was any such "practice".

8. This practice continued on until Traci Fisher left.

**ANSWER:** Defendant denies paragraph 8. Defendant affirmatively denies there was any agreement "to handle transportation and delivery of Intercontinental's shipments as a matter of course" and further denies there was any such "practice".

9. After Traci Fisher left, her replacement, Susan Phillips, without notice or explanation, immediately stopped the practice of delivery of Intercontinental's containers.

**ANSWER:** Defendant denies paragraph 9. Defendant affirmatively denies there was any agreement "to handle transportation and delivery of Intercontinental's shipments as a matter of course" and further denies there was any such "practice".

10. In fact, as described below, Phillips ultimately refused to handle the delivery of containers that DSV contracted with Intercontinental to handle when Traci Fisher was still at DSV.

**ANSWER:** Defendant denies paragraph 10. Defendant affirmatively denies there was any agreement "to handle transportation and delivery of Intercontinental's shipments as a matter of course" and further denies there was any such "practice". Defendant further affirmatively denies that DSV contracted with Intercontinental to handle all of the shipments at issue in this case.

A. **Indianapolis Container**

11. Intercontinental contracted with DSV to handle the shipment of one of its containers to Indianapolis.

**ANSWER:** Paragraph 11 is a legal conclusion to which no response is required. To the extent paragraph 11 alleges facts, Defendant denies paragraph 11.

12.     On July 30, 2021 Munele Miltao, an employee of Maersk (a shipping company) internally flagged a container at 310 Transfer Drive, Indianapolis that had been sitting there for 30 days in the yard.

**ANSWER:** Defendant denies paragraph 12 for lack of sufficient knowledge or information.

13.     Three days later, on August 3, 2021, another employee of Maersk emailed Matt Hale of Intercontinental notifying him that the flagged container had collected 33 days demurrage, requiring collection of the container and payment for holding it past the last free day of storage (07/01/21).

**ANSWER:** Defendant denies paragraph 13 for lack of sufficient knowledge or information.

14.     On August 9, 2021, Matt Hale emailed Susan Phillips at DSV: "This container still needs to be delivered."

**ANSWER:** Defendant admits paragraph 14.  Defendant affirmatively denies there was any agreement "to handle transportation and delivery of Intercontinental's shipments as a matter of course" and further denies there was any such "practice".  Defendant denies that it had such a duty.

15.     The day after, on August 10, 2021, Matt Hale again emailed Ms. Phillips, cc'ing John Kranz (also employed at DSV): "The customer is now desperate for this container. Is there a plan to get this out of there?"

**ANSWER:** Defendant admits paragraph 15 but Defendant affirmatively denies any assertion that it had a duty to deliver the container.

16. Susan Phillips emailed Matt Hale later on August 10, 2021, indicating that DSV will not be arranging delivery for the container.

**ANSWER:** Defendant denies paragraph 16 for lack of sufficient knowledge or information.

17. That indication was not accompanied with a justification for the change.

**ANSWER:** Defendant denies paragraph 17 for lack of sufficient knowledge or information. To the extent paragraph 17 alleges that DSV had changed its course of dealing, DSV denies this allegation. Defendant affirmatively denies there was any agreement "to handle transportation and delivery of Intercontinental's shipments as a matter of course" and further denies there was any such "practice".

18. That same day, Matt Hale emailed John Kranz directly:

  a. attaching documents showing that DSV was involved in the delivery of the container from the beginning,

  b. notifying Kranz that that a former employee of the company, Traci Fisher, had agreed to handle the container's delivery,

  c. informing Kranz that Traci Fisher told Susan Phillips (Fisher's replacement) about where the container was going, instructing Phillips to contact the trucker,

  d. indicating that Fisher had the LFD and PU number, and

e. pointing out to Kranz that Phillips stated her belief that Fisher had already handled the delivery and that Phillips was just jumping in.

**ANSWER:** Responding to paragraph 18, Defendant admits Matt Hale emailed John Kranz. Responding to subparagraph a., Defendant admits that Hale attached documents. As to the legal meaning and effect of the email and documents, the email and documents speak for themselves. Defendant denies every allegation inconsistent therewith. Responding to sub paragraph b., Defendant admits Hale made statements in the communication regarding his claim that Traci Fisher agreed to handle delivery. Responding to paragraph c., Defendant admits Hale made statements alleging actions on the part of Traci Fisher. Responding to paragraphs d. and e., Defendant admits Hale made claims alleging statements by Susan Phillips. Defendant affirmatively denies all remaining allegations of paragraph 18 and its subparagraphs. Defendant affirmatively denies there was any agreement "to handle transportation and delivery of Intercontinental's shipments as a matter of course" and further denies there was any such "practice".

19. DSV didn't respond to Matt Hale's email attaching documents and proof that DSV had agreed to handle the container's delivery and had the requisite information to know of its location.

**ANSWER:** Defendant denies paragraph 19. Defendant affirmatively denies there was any agreement "to handle transportation and delivery of Intercontinental's shipments as a matter of course" and further denies there was any such "practice".

20. DSV never delivered the container.

**ANSWER:** Defendant admits paragraph 20. Defendant affirmatively denies there was any agreement "to handle transportation and delivery of Intercontinental's shipments as a matter of course" and further denies there was any such "practice".

21. Intercontinental suffered economic damages in bearing the costs of DSV's failure to follow through on its obligations.

**ANSWER:** Defendant denies paragraph 21.

**B.    Charleston Containers**

22. Intercontinental contracted with DSV to handle the shipment of several containers in the Charleston area of North Carolina.

**ANSWER:** Paragraph 22 contains a legal conclusion. To the extent paragraph 22 contains facts, Defendant denies paragraph 22.

23. On April 1, 2021, a client of Matt Hale's requested six containers delivered to North Wilksboro, North Carolina. The client anticipated that delivery would be made in early June and would arrive at the business location.

**ANSWER:** Defendant denies paragraph 23 for lack of sufficient knowledge or information.

24. On April 2, 2021, Matt Hale emailed Traci Fisher at DSV, "I'm going to do these CIF with clearance. Okay with you? To Gardner in NC."

**ANSWER:** Defendant denies paragraph 24 for lack of sufficient knowledge or information. Defendant affirmatively denies there was any agreement "to handle transportation and delivery of Intercontinental's shipments as a matter of course" and further denies there was any such "practice".

25.     Traci Fisher emailed back on the same day, "Sounds great!"

**ANSWER:**     Defendant denies paragraph 25 for lack of sufficient knowledge or information.   Defendant affirmatively denies there was any agreement "to handle transportation and delivery of Intercontinental's shipments as a matter of course" and further denies there was any such "practice".

26.     Due to unexpected freight changes, Matt Hale forwarded to Traci Fisher an email chain titled "Crisis" that included emails between himself and another company, Efficient Glass. Matt Hale instructed Traci that a number of shipments, including the Wilksboro shipment, needed to be affordably shipped. Matt Hale sent this email on May 3, 2021, with a follow up email on May 6, 2021, forwarding the same information to her.

**ANSWER:**     Defendant denies paragraph 26 for lack of sufficient knowledge or information.   Defendant affirmatively denies there was any agreement "to handle transportation and delivery of Intercontinental's shipments as a matter of course" and further denies there was any such "practice".

27.     Traci Fisher responded to the "Crisis" email on May 6, 2021, stating "Yep perfect."

**ANSWER:**     Defendant denies paragraph 27 for lack of sufficient knowledge or information.  Defendant affirmatively denies there was any agreement "to handle transportation and delivery of Intercontinental's shipments as a matter of course" and further denies there was any such "practice".

28.     Meanwhile, a similar shipment was expected to arrive in Charleston on July 16, 2021.

f.      Efficient Glass emailed Traci Fisher, cc'ing Matt Hale, on June 30, 2021, requesting that DSV prepare and arrange the pickup and delivery in time.

g.      Traci Fisher emailed Susan Phillips of DSV on July 3, 2021, indicating that there was no file on the delivery orders.

h.      Susan Phillips emailed Efficient Glass on July 6, 2021, cc'ing Matt Hale, asking Efficient Glass to send the commercial documents on the shipment and inquiring whether there would be an arrival notice sent.

**ANSWER:**  Responding to paragraph 28, Defendant denies for lack of sufficient knowledge or information. Responding to subparagraphs f. through h., Defendant admits. Defendant affirmatively denies it had any duty to deliver the containers.

29.     Five containers made up the Charleston shipment and are identified through emails as Cust. Ref# IBP 105214, 105215, 105216, 130333, and 130334.

**ANSWER:**  Defendant denies paragraph 29 for lack of sufficient knowledge or information.

30.     On July 15, 2021, Ms. Phillips emailed Matt Hale, cc'ing Megan Johnson of DSV, pointing out that DSV had not seen the arrival notice of the Charleston containers, asking to confirm if Matt Hale wanted DSV to handle delivery.

**ANSWER:**  Defendant admits paragraph 30. Defendant affirmatively denies there was any agreement "to handle transportation and delivery of Intercontinental's shipments as a matter of course" and further denies there was any such "practice".

31.     Notably, on July 14, 2021 (one day before Susan Phillips's request for shipment information on the Charleston containers), Andrea Picazo, the Ocean Import Coordinator of OEC

(an Ocean Freight company that Intercontinental used for shipment of the containers), sent an email cc'ing Matt Hale, Susan Phillips, and Megan Johnson (another employee of DSV) the container numbers.

**ANSWER:** With respect to paragraph 31, Defendant admits that Susan Phillips and Megan Johnson received an email from Andrea Picazo on July 14, 2021, and denies the remaining allegations of Paragraph 31. Defendant affirmatively denies there was any agreement "to handle transportation and delivery of Intercontinental's shipments as a matter of course" and further denies there was any such "practice".

32. Over the next two weeks, a number of emails were exchanged between Matt Hale, Susan Phillips, and Megan Johnson, Andrea Picazo and Caroline Xu of OEC.

**ANSWER:** Defendant admits paragraph 32.

33. These emails included requests by Susan Phillips to know the terminal the containers would arrive at, their weight, and other information necessary for handling transport.

**ANSWER:** Defendant admits paragraph 33. Defendant affirmatively denies there was any agreement "to handle transportation and delivery of Intercontinental's shipments as a matter of course" and further denies there was any such "practice".

34. On July 14, 2021 Caroline Xu of OEC emailed Susan Phillips, cc'ing Matt Hale and Megan Johnson pointing out that OEC is responsible for customs clearance, and that Traci (Susan's predecessor) has previously been the person responsible for delivery.

**ANSWER:** To the extent paragraph 34 alleges an employee or representative of a non-party made claims about the course of dealing between Plaintiff and Defendant, Defendant admits paragraph 34. Defendant denies all remaining allegations of paragraph 34. Defendant

affirmatively denies that it had a duty to deliver.  Defendant affirmatively denies there was any agreement "to handle transportation and delivery of Intercontinental's shipments as a matter of course" and further denies there was any such "practice".

35.     Despite this stated commitment, Susan Phillips emailed Caroline Xu on July 19, 2021, cc'ing Andrea Picazo, Megan Johnson, and Matt Hale, informing the parties that DSV had declined to handle the containers.

**ANSWER:**  Defendant admits that on July 19, 2021 Susan Phillips sent an email to Matt Hale and Andrea Picazo declining to the handle the delivery of the containers. Defendant admits Megan Johnson was cc'd on this email. Defendant denies all remaining allegations of paragraph 35.  Defendant affirmatively denies that it had a duty to deliver.   Defendant affirmatively denies there was any agreement "to handle transportation and delivery of Intercontinental's shipments as a matter of course" and further denies there was any such "practice".

36.     Megan Johnson sent a follow up email the same day indicating that DSV would not handle the containers.

**ANSWER:**   Defendant denies paragraph 36 for lack of sufficient information or knowledge.

37.     Megan Johnson's email declining to handle the containers was followed up by another email telling Matt Hale that DSV is "not going to abandon the things were working on prior to Traci's departure, or near that time."

**ANSWER:**    Defendant denies paragraph 37 for lack of sufficient knowledge or information.  Defendant affirmatively denies there was any agreement "to handle transportation

12

and delivery of Intercontinental's shipments as a matter of course" and further denies there was any such "practice".

38.     DSV never handled the delivery.

**ANSWER:**  Defendant admits paragraph 38.  Defendant affirmatively denies that it had a duty to deliver.  Defendant affirmatively denies there was any agreement "to handle transportation and delivery of Intercontinental's shipments as a matter of course" and further denies there was any such "practice".

39.     Intercontinental suffered economic damages in bearing the costs of DSV's failure to follow through on its obligations.

**ANSWER:**  Defendant denies paragraph 39.  Defendant affirmatively denies that it had a duty to deliver.  Defendant affirmatively denies there was any agreement "to handle transportation and delivery of Intercontinental's shipments as a matter of course" and further denies there was any such "practice".

**C.     Los Angeles Container**

40.     In addition to Indianapolis and Charleston container issues, DSV shipped a third container, bound for Los Angeles, to the wrong location that was agreed upon.

**ANSWER:**  Defendant denies paragraph 40.

41.     Intercontinental gave DSV the correct location as part of its agreement.

**ANSWER:**  Defendant denies paragraph 41.  Defendant affirmatively denies that it had a duty to deliver the containers.

42.     The shipment to the incorrect location occurred on or about 8/31/2021.

**ANSWER:** To the extent paragraph 42 alleges events surrounding the Los Angeles container occurred on or about August 31, 2021, Defendant admits paragraph 42. Defendant denies all remaining allegations of paragraph 42. Defendant affirmatively denies that it had a duty to deliver.

43. DSV gave no reason nor excuse for its error.

**ANSWER:** Defendant denies paragraph 43. Defendant affirmatively denies that it made any error. Defendant affirmatively denies that it had a duty to deliver.

44. This resulted in further economic damages that required Intercontinental to remediate.

**ANSWER:** Defendant denies paragraph 44. Defendant affirmatively denies that it had a duty to deliver. Defendant affirmatively denies there was any agreement "to handle transportation and delivery of Intercontinental's shipments as a matter of course" and further denies there was any such "practice".

**FIRST CLAIM FOR RELIEF: BREACH OF CONTRACT – Indianapolis Container**

1. Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs as if set forth herein.

**ANSWER:** In answering paragraph 1 of Plaintiff's First Claim for Relief, Defendant incorporates by reference all other paragraphs to this answer as if fully set forth herein.

2. Plaintiffs had a valid and enforceable contract with DSV to handle the delivery of the Indianapolis Container.

**ANSWER:** Paragraph 2 is a legal conclusion to which no response is required. To the extent paragraph 2 alleges facts, Defendant denies paragraph 2. Defendant affirmatively denies

that it had a duty to deliver. Defendant affirmatively denies there was any agreement "to handle transportation and delivery of Intercontinental's shipments as a matter of course" and further denies there was any such "practice".

3.      Plaintiff had an ongoing relationship with Traci Fisher at DSV for DSV to handle the delivery of its containers.

**ANSWER:** Defendant denies paragraph 3. Defendant affirmatively denies that it had a duty to deliver. Defendant affirmatively denies there was any agreement "to handle transportation and delivery of Intercontinental's shipments as a matter of course" and further denies there was any such "practice".

4.      DSV, through their agent Traci Fisher, had agreed to handle delivery of this container.

**ANSWER:** Paragraph 4 is a legal conclusion to which no response is required. To the extent paragraph 4 alleges facts, Defendant denies paragraph 4. Defendant affirmatively denies that it had a duty to deliver. Defendant affirmatively denies there was any agreement "to handle transportation and delivery of Intercontinental's shipments as a matter of course" and further denies there was any such "practice".

5.      DSV breached the contract by not handling delivery of the container.

**ANSWER:** Paragraph 5 is a legal conclusion to which no response is required. To the extent paragraph 5 alleges facts, Defendant denies paragraph 5. Defendant affirmatively denies the allegation that it breached the alleged contract. Defendant affirmatively denies that it had a duty to deliver. Defendant affirmatively denies there was any agreement "to handle transportation and

delivery of Intercontinental's shipments as a matter of course" and further denies there was any such "practice".

6.      Plaintiff fully performed by handling the shipments as it has in the past with DSV as well as putting DSV on notice of the containers.

**ANSWER:**  Paragraph 6 is a legal conclusion to which no response is required. To the extent paragraph 6 alleges facts, Defendant denies paragraph 6.  Defendant affirmatively denies that it had a duty to deliver.  Defendant affirmatively denies there was any agreement "to handle transportation and delivery of Intercontinental's shipments as a matter of course" and further denies there was any such "practice".

7.      DSV's breach resulted in damages, including the accrual of unnecessary storage fees and lost opportunities and business.

**ANSWER:** Paragraph 7 is a legal conclusion to which no response is required. To the extent paragraph 7 alleges facts, Defendant denies paragraph 7. Defendant affirmatively denies the allegation that it breached the alleged contract.  Defendant affirmatively denies that it had a duty to deliver.  Defendant affirmatively denies there was any agreement "to handle transportation and delivery of Intercontinental's shipments as a matter of course" and further denies there was any such "practice".

8.      Plaintiffs suffered damages in an amount to be proven at trial as a direct and proximate result of this breach.

**ANSWER:**    Defendant denies paragraph 8. Defendant affirmatively denies Plaintiff's claimed entitlement to damages.  Defendant affirmatively denies the allegation that it breached the alleged contract.   Defendant affirmatively denies that it had a duty to deliver.   Defendant

affirmatively denies there was any agreement "to handle transportation and delivery of Intercontinental's shipments as a matter of course" and further denies there was any such "practice".

**SECOND CLAIM FOR RELIEF: BREACH OF CONTRACT – Charleston Container**

9.      Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs as if set forth herein.

**ANSWER:**  In answering paragraph 9 of Plaintiff's Second Claim for Relief, Defendant incorporates by reference all other paragraphs to this answer as if fully set forth herein.

10.      Plaintiffs had a valid and enforceable contract with DSV to handle the delivery of the Charleston Container.

**ANSWER:**  Paragraph 10 is a legal conclusion to which no response is required. To the extent paragraph 10 alleges facts, Defendant denies paragraph 10. Defendant affirmatively denies the existence of any contract.  Defendant affirmatively denies that it had a duty to deliver. Defendant affirmatively denies there was any agreement "to handle transportation and delivery of Intercontinental's shipments as a matter of course" and further denies there was any such "practice".

11.      Plaintiffs had an ongoing relationship with Traci Fisher at DSV for DSV to handle the delivery of its containers.

**ANSWER:**  Defendant denies paragraph 11.

12.      DSV, through their agent Traci Fisher, had agreed to handle delivery of these containers, as well.

**ANSWER:** Paragraph 12 is a legal conclusion to which no response is required. To the extent paragraph 12 alleges facts, Defendant denies paragraph 12.

13. DSV breached the contract by not handling delivery of the containers.

**ANSWER:** Paragraph 13 is a legal conclusion to which no response is required. To the extent paragraph 13 alleges facts, Defendant denies paragraph 13. Defendant affirmatively denies the allegation that it breached the alleged contract.

14. Plaintiff fully performed by handling the shipments as it has in the past with DSV as well as putting DSV on notice of the containers.

**ANSWER:** Paragraph 14 is a legal conclusion to which no response is required. To the extent paragraph 14 alleges facts, Defendant denies paragraph 14.

15. DSV's breach resulted in damages, including the accrual of unnecessary storage fees and lost opportunities and business.

**ANSWER:** Paragraph 15 is a legal conclusion to which no response is required. To the extent paragraph 15 alleges facts, Defendant denies paragraph 15. Defendant affirmatively denies the allegation that it breached the alleged contract.

16. Plaintiffs suffered damages in an amount to be proven at trial as a direct and proximate result of this breach.

**ANSWER:** Defendant denies paragraph 16. Defendant affirmatively denies Plaintiff's claimed entitlement to damages.

**THIRD CLAIM FOR RELIEF: BREACH OF CONTRACT – Los Angeles Container**

17. Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs as if set forth herein.

**ANSWER:** In answering Plaintiff's Third Claim for Relief, Defendant incorporates by reference all other paragraphs to this answer as if fully set forth herein.

18. Plaintiffs had a valid and enforceable contract with DSV to handle the delivery of the Los Angeles Container.

**ANSWER:** Paragraph 18 is a legal conclusion to which no response is required. To the extent paragraph 18 alleges facts, Defendant denies paragraph 18. Defendant affirmatively denies the existence of any contract. Defendant affirmatively denies that it had a duty to deliver. Defendant affirmatively denies there was any agreement "to handle transportation and delivery of Intercontinental's shipments as a matter of course" and further denies there was any such "practice".

19. DSV breached the contract by sending the container to the wrong location.

**ANSWER:** Defendant denies paragraph 19. Defendant affirmatively denies the existence of any contract. Defendant affirmatively denies the allegation that it breached the alleged contract. Defendant affirmatively denies that it had a duty to deliver. Defendant affirmatively denies there was any agreement "to handle transportation and delivery of Intercontinental's shipments as a matter of course" and further denies there was any such "practice".

20. Plaintiff fully performed by giving DSV the correct location to send the container.

**ANSWER:** Defendant denies paragraph 20. Defendant affirmatively denies the existence of any contract.

21. DSV's breach resulted in damages, including the costs of moving the container to the correct location.

**ANSWER:** Paragraph 21 is a legal conclusion to which no response is required. To the extent paragraph 21 alleges facts, Defendant denies paragraph 21. Defendant affirmatively denies the allegation that it breached the alleged contract or that it caused Intercontinental to sustain any alleged damages.

22.     Plaintiffs suffered damages in an amount to be proven at trial as a direct and proximate result of this breach.

**ANSWER:** Defendant denies paragraph 22. Defendant affirmatively denies Plaintiff's claimed entitlement to damages. Defendant affirmatively denies that it caused Intercontinental to sustain any alleged damages.

## FOURTH CLAIM FOR RELIEF: PROMISSORY ESTOPPEL

23.     Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs as if set forth herein.

**ANSWER:** In answering Plaintiff's Fourth Claim for Relief, Defendant incorporates by reference all other paragraphs to this answer as if fully set forth herein.

24.     Intercon had a history of working with Traci Fisher that included delivery of Intercon's containers to customers.

**ANSWER:** Defendant denies paragraph 24. Defendant affirmatively denies the existence of any contract. Defendant affirmatively denies that it had a duty to deliver. Defendant affirmatively denies there was any agreement "to handle transportation and delivery of Intercontinental's shipments as a matter of course" and further denies there was any such "practice".

25.     An example of this practice is indicated in an email that Traci Fisher sent.  Exhibit B.

**ANSWER:**  Defendant denies paragraph 25.  Defendant affirmatively denies the existence of any contract.   Defendant affirmatively denies that it had a duty to deliver.   Defendant affirmatively denies there was any agreement "to handle transportation and delivery of Intercontinental's shipments as a matter of course" and further denies there was any such "practice".

26.     Intercontinental expected that there would be no change in this practice once Traci Fisher left DSV's employment.

**ANSWER:**  To the extent paragraph 26 alleges a course of dealing between Plaintiff and Defendant, Defendant denies paragraph 26. Defendant denies the remaining allegations of paragraph 26 for lack of sufficient knowledge or information.  Defendant affirmatively denies the existence of any contract.   Defendant affirmatively denies that it had a duty to deliver.   Defendant affirmatively denies there was any agreement "to handle transportation and delivery of Intercontinental's shipments as a matter of course" and further denies there was any such "practice".

27.     Furthermore, Intercontinental had no reason to expect that there would be a change in this practice once Traci Fisher left.

**ANSWER:**  To the extent paragraph 27 alleges a course of dealing between Plaintiff and Defendant, Defendant affirmatively denies paragraph 27. Defendant denies the remaining allegations of paragraph 27.

28.     DSV did not inform Intercontinental that the practice of delivering Intercontinental's containers would be discontinued until *after* Intercontinental's Indianapolis containers began accruing pees at port.

**ANSWER:** To the extent paragraph 28 alleges a course of dealing between Plaintiff and Defendant, Defendant affirmatively denies paragraph 28. Defendant denies the remaining allegations of paragraph 28.  Defendant affirmatively denies the existence of any contract. Defendant affirmatively denies the allegation that it breached the alleged contract.  Defendant affirmatively denies that it had a duty to deliver.  Defendant affirmatively denies there was any agreement "to handle transportation and delivery of Intercontinental's shipments as a matter of course" and further denies there was any such "practice".

29.     Because Traci Fisher was an employee of DSV and had a history of arranging delivery for Intercontinental, DSV was on notice that Intercontinental expected the practice to apply to the Charleston container.

**ANSWER:** To the extent paragraph 29 alleges a course of dealing between Plaintiff and Defendant, Defendant affirmatively denies paragraph 29. Defendant admits only that Traci Fisher was an employee of DSV.  Defendant denies the remaining allegations of paragraph 29.  Defendant affirmatively denies the existence of any contract.   Defendant affirmatively denies that it had a duty to deliver.  Defendant affirmatively denies there was any agreement "to handle transportation and delivery of Intercontinental's shipments as a matter of course" and further denies there was any such "practice".

30.     Because Traci Fisher was an employee of DSV arranging delivery for Intercontinental, DSV was on notice that Intercontinental expected the practice to apply to the Indianapolis containers.

**ANSWER:**  To the extent paragraph 30 alleges a course of dealing between Plaintiff and Defendant, Defendant affirmatively denies paragraph 30. Defendant admits only that Traci Fisher was an employee of DSV. Defendant denies the remaining allegations of paragraph 30.  Defendant affirmatively denies that it had a duty to deliver.  Defendant affirmatively denies there was any agreement "to handle transportation and delivery of Intercontinental's shipments as a matter of course" and further denies there was any such "practice".

31.     Once the containers began accruing fees, and as soon as Intercontinental became aware of that fact, Intercontinental contacted DSV to notify them of the issue.

**ANSWER:**   Defendant denies paragraph 31 for lack of sufficient knowledge or information.

32.     Intercontinental reminded DSV that Traci Fisher had arranged delivery for Intercontinental.

**ANSWER:**  To the extent paragraph 32 alleges a course of dealing between Plaintiff and Defendant, Defendant affirmatively denies paragraph 32. Defendant admits Matt Hale produced emails suggesting Traci Fisher had arranged for delivery for Intercontinental. Defendant affirmatively denies the existence of any contract.   Defendant affirmatively denies that it had a duty to deliver.  Defendant affirmatively denies there was any agreement "to handle transportation and delivery of Intercontinental's shipments as a matter of course" and further denies there was any such "practice".

33.     DSV nevertheless declined to deliver the containers.

**ANSWER:**  To the extent paragraph 33 alleges a course of dealing between Plaintiff and Defendant, Defendant affirmatively denies paragraph 33. Defendant admits it declined to deliver the containers.    Defendant affirmatively denies the existence of any contract.    Defendant affirmatively denies that it had a duty to deliver.  Defendant affirmatively denies there was any agreement "to handle transportation and delivery of Intercontinental's shipments as a matter of course" and further denies there was any such "practice".

34.     Intercontinental had to arrange alternative means of delivering their containers.

**ANSWER:**    Defendant denies paragraph 34 for lack of sufficient knowledge or information.

35.     Intercontinental had to pay the fees for the containers being held up at their ports.

**ANSWER:**    Defendant denies paragraph 35 for lack of sufficient knowledge or information.    Defendant affirmatively denies the existence of any contract.    Defendant affirmatively denies that it had a duty to deliver.  Defendant affirmatively denies there was any agreement "to handle transportation and delivery of Intercontinental's shipments as a matter of course" and further denies there was any such "practice".  Defendant affirmatively denies that it caused the accrual of the alleged fees.

## RESPONSE TO PLAINTIFF'S PRAYER FOR RELIEF

Defendant denies that Plaintiff is factually, legally, or equitably entitled to any of the relief requested in its prayer for relief, and requests that such relief be denied.

## DENIAL OF ALL FACTS NOT EXPRESSLY ADMITTED

Defendant denies every allegation of Plaintiff's Complaint not expressly admitted herein.

## SECOND DEFENSE

Because there was no contract between the parties for the delivery of the shipments at issue, Plaintiff's claims fail on the merits.

## THIRD DEFENSE

Plaintiff's claims fail to the extent there was lack of consideration and/or failure of consideration.

## FOURTH DEFENSE

To the extent Plaintiff and Defendant had a contract, Defendant acted consistent with the parties' previous course of dealing.

## FIFTH DEFENSE

To the extent Plaintiff and Defendant had a contract, Plaintiff's claims and its alleged damages are limited by the terms of the contract.

## SIXTH DEFENSE

Plaintiff's claims may be barred by the doctrine of estoppel, waiver, accord and satisfaction, ratification, contract modification, acquiescence and/or mistake.

## SEVENTH DEFENSE

Plaintiff's claims may be barred due to the failure of a condition precedent.

## EIGHTH DEFENSE

Plaintiff's claims are barred to the extent there was no assent and/or meeting of the minds between the parties, and to the extent Fisher exceeded her actual and/or apparent authority to act on behalf of DSV.

## NINTH DEFENSE

Plaintiff's claims may be barred by the doctrine of release of liability, unclean hands, laches, and/or unjust enrichment, such that it would be unequitable to grant Plaintiff the relief sought.

## TENTH DEFENSE

Plaintiff's claims fail or are limited to the extent that Plaintiff's damages were the result of a superseding or intervening cause.

## ELEVENTH DEFENSE

To the extent Plaintiff failed to mitigate its alleged injuries and damages, if any, Plaintiff's claims are accordingly limited or barred.

## TWELFTH DEFENSE

Plaintiff's contract claims fail to the extent Plaintiff was the first party to materially breach the contract.

## THIRTEENTH DEFENSE

Plaintiff has failed to join one or more indispensable parties.

## FOURTEENTH DEFENSE

One or more of Plaintiff's claims may be barred or limited, in whole or in part, by the application of the Utah Liability Reform Act. The alleged damages sustained by Plaintiff, if any, may have been caused by the comparative fault of Plaintiff, Plaintiff's agents (including but not limited to Matthew Hale), and/or third parties over whom Defendant had no control or right of control, and as such, any recovery upon the claims asserted by Plaintiff is barred or proportionately reduced pursuant to Utah Code § 78B-5-818, *et seq*. To the extent the claims are subject to the

Liability Reform Act and Plaintiff's fault is equal to or greater than the fault of Defendant, Plaintiff's claims are barred in total.

## RESERVATION TO AMEND

Defendant reserves the right to amend this Answer to include additional affirmative defenses.

## NOTICE OF RELIANCE ON JURY DEMAND

Defendant demands a trial by jury and relies on Plaintiff's demand for same.

## DEFENDANT'S PRAYER FOR RELIEF

Having fully answered Plaintiff's Amended Complaint, Defendant prays that the same be dismissed with prejudice and that Defendant recover its costs of Court incurred herein, and such other and further relief as the Court deems just and equitable.

## COUNTERCLAIM

DSV, pursuant to Rule 13 of the Utah Rules of Civil Procedure, hereby asserts the following counterclaim against Intercontinental Building Products, LLC, alleging as follows:

## INTRODUCTION

DSV Air & Sea, Inc. is a company providing freight forwarding services to clients. As indicated in the company name, DSV coordinates the transportation of shipments by air and sea. DSV and Intercontinental Building Products, LLC ("Intercontinental") are parties to a power of attorney agreement ("Agreement") which formed a contract for DSV's services on behalf of Intercontinental. As set forth herein, Intercontinental has materially breached the agreement by refusing to remit payment for DSV's services rendered. As a result of Intercontinental's breach, DSV has been damaged in an amount to be proven at trial.

## PARTIES

1.      Counterclaim Plaintiff DSV Air & Sea, Inc. is a Delaware corporation authorized to do business in the state of Utah. DSV's principal place of business is New Jersey.

2.      Counterclaim Defendant Intercontinental Building Products, LLC is a Texas corporation with its principal place of business in Texas.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over the claims alleged herein pursuant to 28 U.S.C. § 1367(a).

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a).

## GENERAL ALLEGATIONS

5.      DSV is a company that offers freight forwarding services.

6.      Intercontinental engaged DSV's services for the purpose of transporting goods.

7.      DSV has served as a freight forwarder on behalf of Intercontinental since October of 2020.

8.      On October 14, 2020, the president of Intercontinental, Matt Hale, signed a power of attorney engaging DSV's services.

9.      The power of attorney granted DSV authority to act on behalf of Intercontinental "for the purpose of performing duties in connection with the entry and release of goods, post entry services, the securing of export licenses, the filing of export and cartage, handling and/or delivery and/or storage or otherwise."

10.     Approximately mid-year of 2021, DSV and Intercontinental began to have disagreements regarding the scope of work DSV would perform on behalf of Intercontinental.

11.     DSV has continued to provide freight forwarding services on behalf of Intercontinental pursuant to the power of attorney up through and including December 2021.

12.     DSV has paid various charges on behalf of Intercontinental, including but not limited to detention and demurrage charges.

13.     Beginning in July 2021, Intercontinental ceased to pay the DSV invoices.

14.     DSV has issued invoices to Intercontinental for services performed and charges paid on behalf on Intercontinental. These invoice numbers include: US07262941, US07291228, US07354084, US07360034, US07422043, US07440555, US07459111, US07461024, US07492560, US07495117, US07495292, US07495581, US07496248, US07570685, US07577780, US07605932, US07628130, US07772757, US07772873, and US07778194.

15.     Intercontinental owes and has refused to pay DSV for these invoices.

16.     Intercontinental owes DSV more than $217,000.00 in unpaid and overdue invoices for services rendered.

17.     DSV has been damaged as a result of Intercontinental's refusal to pay.

## FIRST CAUSE OF ACTION
### Breach of Contract

18.     DSV realleges and incorporates by reference all other paragraphs of this counterclaim as if set forth herein.

19.     In October 2020, DSV and Intercontinental entered into the power of attorney agreement which set forth the terms, requirements, and duties surrounding DSV's freight forwarding services on behalf of Intercontinental.

20.     DSV performed its obligations under the agreement.

21.     Intercontinental materially breached the power of attorney agreement, including the implied covenant of good faith and fair dealing, by *inter alia* failing and refusing to pay DSV for its services rendered on behalf of Intercontinental.

22.     As a result of Intercontinental's breaches, DSV has been damaged in an amount to be proven at trial, but not less than $217,000.00.

### SECOND CAUSE OF ACTION
### Unjust Enrichment

23.     DSV realleges and incorporates by reference all other paragraphs of this counterclaim as if set forth herein.

24.     DSV conferred a benefit on Intercontinental.

25.     The benefit includes but is not limited to freight forwarding services performed in relation to the following invoice numbers: US07262941, US07291228, US07354084, US07360034, US07422043, US07440555, US07459111, US07461024, US07492560, US07495117, US07495292, US07495581, US07496248, US07570685, US07577780, US07605932, US07628130, US07772757, US07772873, and US07778194.

26.     There is substantial value in the benefit DSV conferred.

27.     Intercontinental appreciated or knew about the benefit.

28.     Intercontinental has received invoices reflecting the value of the benefit conferred but has refused to pay such invoices.

29.     Under the circumstances, it would be inequitable for Intercontinental to retain the benefit conferred by DSV without payment of its value.

30.     DSV is entitled to equitable restitution for unjust enrichment in an amount to be proven at trial, but not less than $217,000.00.

### THIRD CAUSE OF ACTION
**Promissory Estoppel**

31.     DSV realleges and incorporates by reference all other paragraphs of this counterclaim as if set forth herein.

32.     DSV and Intercontinental entered into an agreement wherein DSV agreed to perform services on behalf of Intercontinental in exchange for Intercontinental's promise that it would compensate DSV for such services.

33.     DSV relied upon Intercontintental's promise.

34.     DSV's reliance was reasonable.

35.     Intercontinental knew that DSV relied upon Intercontinental's promise and expected that DSV would so rely.

36.     As a result of Intercontinental's failure and refusal to fulfill its promise to DSV, DSV has sustained damages in an amount to be proven at trial, but not less than $217,000.00.

### FOURTH CAUSE OF ACTION
**Declaratory Judgment**

37.     DSV realleges and incorporates by reference all other paragraphs of this counterclaim as if set forth herein.

38.     The Court is empowered to interpret and declare the rights of the parties.

39.     The Court should declare the following:

a.   Intercontinental and DSV had a contract for services.

b.   Intercontinental was the first party to materially breach the contract.

c.  As a result of Intercontinental's breach, DSV has no further obligation to perform services on behalf of Intercontinental under the power of attorney agreement.

## JURY DEMAND

DSV hereby demands a trial by jury on all its claims and causes of action.

## PRAYER FOR RELIEF

DSV prays for the following relief on this counterclaim:

1.  On the first cause of action, for damages in an amount to be proven at trial;

2.  On the second cause of action, for damages in an amount to be proven at trial;

3.  On the third cause of action, for damages in an amount to be proven at trial;

4.  On the fourth cause of action, for a declaratory judgment as authorized by 28 U.S.C § 2201(a);

5.  For reasonable attorney fees, costs and/or expenses incurred herein and as provided for under the power of attorney agreement; and

6.  For such other and further relief as the Court may deem just and proper.

DATED this 12th day of January, 2022.

CHRISTENSEN & JENSEN, P.C.

_____

Sarah Elizabeth Spencer
Anna P. Christiansen
*Attorneys for Defendant DSV Air & Sea, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of January, 2022, a true and correct copy of the foregoing **AMENDED ANSWER TO FIRST AMENDED COMPLAINT & COUNTERCLAIM** was delivered via the court's electronic filing system to the following:

> Andrew G. Deiss
> Sydney J. Sell
> David Ferguson
> DEISS LAW PC
> 10 West 100 South, Suite 700
> Salt Lake City UT 84101
> adeiss@deisslaw.com
> ssell@deisslaw.com
> dferguson@deisslaw.com
> *Attorneys for Plaintiff*